RECEIVED
February 27, 2023
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY: ___Javier Martinez___
DEPUTY

FILED
February 28, 2023
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY: ___Myrna Gallegos___
DEPUTY

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | |
|---|---|
| **ALEJANDRO HERNANDEZ,** § | |
| § | |
| **Plaintiff,** § | |
| § | |
| **v.** § | |
| § | **CAUSE NO. 3:21-CV-00055-DCG** |
| **EL PASOANS FIGHTING HUNGER,** § | |
| **JOSE "ABE" GONZALEZ,** § | |
| **SUSAN E. GOODALL, and JOHN DOE.** § | |
| § | |
| **Defendants** § | |

## PLAINTIFF'S PROPOSED FIRST AMENDED COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

Now Comes, ALEJANDRO HERNANDEZ (hereinafter the "Plaintiff"), bringing cause of action against Defendants, individually under 42 U.S.C. § 12181, The Americans With Disabilities Act, which Defendants willfully violated and are still not compliant. Plaintiff also brings a supplemental state cause of action for assault. In support thereof Plaintiff respectfully shows the Court as follow:

### PARTIES

1. Plaintiff, ALEJANDRO HERNANDEZ, is an individual, resides in El Paso County, Texas, and qualifies as an individual with disabilities as defined by the Americans with Disabilities Act.

2. Defendant, EL PASOANS FIGHTING HUNGER, (hereinafter "Defendant EPFH") is Texas Nonprofit Domestic Corporation, doing business in El Paso County, Texas, and operates a place of public accommodation as defined by in Title III of the Americans with Disabilities Act (ADA). Defendant EPFH may be served via its registered agent, Abe Howard

Gonzalez, also known as Jose "Abe" Gonzalez, located at 221 N Kansas, Ste 1700, El Paso, TX 79901.

3. Defendant, JOSE "ABE" GONZALEZ, (hereinafter "Defendant Gonzalez") is an individual, that operates a place of public accommodation in El Paso, Texas, as defined by in Title III of the Americans with Disabilities Act (ADA). Defendant Gonzalez may be served at 221 N Kansas, Ste 1700, El Paso, TX 79901.

4. Defendant SUSAN E. GOODALL, (hereinafter "Defendant Goodall") is an individual, that operates a place of public accommodation in El Paso, Texas, as defined by in Title III of the Americans with Disabilities Act (ADA). Defendant Goodall may be served at 9541 Plaza Cir, El Paso, TX 79927.

5. Defendant JOHN DOE, (hereinafter "Defendant Doe") is an individual that was employed by Defendant EL PASOANS FIGHTING HUNGER, and may be served at 9541 Plaza Cir, El Paso, TX 79927.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, and Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181, et seq. This Court has supplemental jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. §1367.

7. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because the events giving rise to Plaintiff's claim occurred in this judicial district.

## STATEMENT OF FACTS

8. Defendant EPFH, a food bank, is a Texas Nonprofit Domestic Corporation with its stated mission "to combat the hunger crisis in our region by strategically procuring and distributing nutritious food through community partners...because no one should go hungry."

Every year, Defendant EPFH receives millions of dollars of aid from among other sources, among them being, the United States Department of Agriculture (USDA).

9.     The USDA promulgates a nondiscriminatory policy which prohibits any of its programs, like Defendant El Pasoans Fighting Hunger from discriminating in providing food or services to the general public on account of, among other things, disability.

10.    Defendants Gonzalez and Goodall, the policy makers of the Defendant EPFH, promulgate policy decisions regarding the operations of the many food banks throughout the County of El Paso, Texas.

11.    This action arises from the Defendants' arbitrary and capricious policy that violates Title III of the ADA, by promulgating policy the requires all customers at their "walk up" location to wear face coverings to obtain food, with no exception for customers who cannot wear a face covering for medical reasons.  Customers, such as Plaintiff, who cannot wear face coverings for medical reasons at the "walk up" food bank, are denied access to food at the food bank operated by Defendants.  The mask covering requirement is in direct contradiction to the State of Texas' and City of El Paso's mask orders and the guidelines published by the United States Center for Disease Control.

12.    Plaintiff is a person with a disability who has physical and/or mental conditions, including asthma exacerbated by breathing difficulties caused by a deviated septum, as well as severe PTSD with chronic anxiety and panic triggers that hinder breathing abruptly as well as other normal daily functions which substantially limit most major life activities with distress. Plaintiff cannot wear the face covering without experiencing difficulty breathing and severe anxiety coupled with panic triggers.

13. The events complained of occurred at the walk-up location at EPFH Distribution West, located at 5300 Doniphan, El Paso, TX, 79932, on January 10, 2021 and January 13, 2021. Plaintiff did at this location encounter the denial of equal access, received physical assault when pushed by Defendant John Doe, an attendant working for the Defendants, experienced shaming in the form of name calling and being publically labeled with demeaning, humiliating and degrading language and treatment from Defendants and their agents at the food bank. Defendants discriminated against him on the sole basis of his disability. For example, on or about January 10, 2021, Plaintiff was physically and repeatedly pushed out of the building by Defendant John Doe, a male staff member at the food bank location made the subject of this lawsuit. Plaintiff informed the Supervisor at the time, Jackie Bracamontes, who stated only, that she would "look into it". Ms. Bracamontes agreed to accommodate Plaintiff on that day however, on the following occasion it was Ms. Bracamontes herself who again denied Plaintiff without explaining her reason or contradiction.

14. In addition to the foregoing, Plaintiff has made a good faith effort to mitigate damages and avoid litigation, by contacting governing personnel at El Pasoans Fighting Hunger to no avail. On more than one occasion Plaintiff spoke to the assistant of the CEO, Ms. Goodall and to the assistant for Tom Cihonski, COO, including sending emails to him personally to which he never responded by phone or email. His assistant Marina Hernandez admitted to knowledge of the medical exceptions in the City and State Orders stating that their policy did have allowances for the same. She made apologies but no changes came from the conversations. Next, Plaintiff spoke to Ian, a counterpart for Ms. Bracamontes at the same location, who said he only followed orders and was not trained specifically for the issues of ADA nor was he informed of the City or State Orders. Ian too was made aware of the physical assault on Plaintiff. Plaintiff

was contacted by Defendant Gonzalez after being notified by Ms. Bracamontes of Plaintiff's intention to seek legal remedy for noncompliance with the ADA. In a telephone conversation, Defendant Gonzalez denied any wrongdoing from the onset and requested that Plaintiff provide him in writing with what Plaintiff was claiming exempted him from wearing a face covering, so that he could take it to "the powers that be."  Plaintiff and Defendant Gonzalez then commenced a series of phone conversations and email communications.  See 14 pages of Emails, individually numbered, hereto attached as **Exhibit 1**, and adopted hereinafter by reference.

15.     In an email dated January 15, 2021, Plaintiff attached the Governor's Executive Order No. GA-29 and the City's Sixth Health Directive, relating to the use of face coverings during the COVID-19 disaster. **Ex. 1, pp. 1-2.**  Plaintiff related to Mr. Gonzalez, the details of the denials experienced, the assault, the harassment, disparaging treatment, the contradictions in policy and the ineffectiveness of the home delivery option Plaintiff had experienced and thus requested a reasonable accommodation of "curb side service" ending his email with "[u]ltimately, my goal is to reach a sensible solution to this real problem and avoid any prospect of litigation and court intervention." *Id*.

16.     Mr. Gonzalez' response email is dated January 22, 2021, at 2:45pm.  First, as to the name and address which Plaintiff had used to register for home delivery, Defendant Gonzalez said inexplicably that "neither of those is accurate."  **Ex. 1, p. 3.**  Plaintiff was puzzled by this statement since that is in fact his name and that was his address (at the time), as evinced by Plaintiff's name on this legal complaint, further Plaintiff had previously explained to Defendant Gonzalez via a telephone conversation that despite having signed up for home delivery more than once, the home delivery system had been ineffective or delayed since November of 2020.

During that phone conversation, Mr. Gonzalez conceded that there were "problems" with the home delivery system; that "many deliveries have not been made."

17. However in a different email, Defendant Gonzalez addressed the "problems" with home delivery stating again "The Food Bank does not have your name or address for home delivery, so that would explain why it is not working." In this way, Mr. Gonzalez ignored the fact that Plaintiff had already communicated to him that Plaintiff was using his correct name and address. Defendant Gonzalez continued to dismiss all facts presented to him, including the assault, the contradictions of their policies, and instead said the food pantry did not have Plaintiff's name. This alone, according to Mr. Gonzalez became the new reason why the home delivery was not working. In another email, Defendant Gonzalez proceeded to outline three accommodations: 1) wear a face shield; 2) home delivery; and, 3) drive to a different location of public accommodation to obtain food via a drive through where Defendant Gonzalez says that Plaintiff would not be required to wear a face covering while in his vehicle. **Ex. 1, p. 3.**

18. Plaintiff replied to Mr. Gonzalez' email the same day at 5:45pm, stating that the face shield was not a reasonable accommodation because Plaintiff could not wear a face shield due to his disability, and further it did not serve the purpose for which it was proposed as it was not recommended by the CDC, the WHO, the State, and the City. **Ex. 1, p. 4**. At this point, Plaintiff, had previously informed Defendant Gonzalez over the phone that he had registered for the home delivery program on <u>two</u> previous occasions, Mr. Gonzalez, had himself already admitted that there were "problems" with the home delivery system and that many "deliveries have not been made." Also, Mr. Gonzalez had admitted that Plaintiff's name and address was not even in the home delivery system, despite the fact Plaintiff had previously registered his address for home delivery twice. ***Id., pp. 3-4***. Plaintiff explained that driving to another place of

6

public accommodation was not a reasonable accommodation since Mr. Gonzalez assumed that Plaintiff owned a vehicle (he does not) to drive to another location. *Id*. Plaintiff ended his email with "[t]he accommodation you offer imposes unreasonable hardships, is not reasonable and places people with disabilities at a disadvantage." *Id*.

19. On January 23, 2021, at 7:29am, Defendant Gonzalez emailed Plaintiff starting with "I'm sorry you feel that way.  Will you allow the food bank to register you for home delivery at that address?" **Ex. 1, p. 5**.  Then Mr. Gonzalez stated that he checked and ascertained through public records, on his own volition, that Plaintiff was not the registered owner of the property when he registered for home delivery. *Id*. Without giving any explanation as to the nature of the inquiry or the relevance of home ownership as it pertained to the home delivery service, Mr. Gonzalez ended his email by asking Plaintiff: "Is that your house?" *Id*.

20. Plaintiff responded the same day at 12:30pm.  Plaintiff asked Defendant Gonzalez what being "the registered owner of the house, have to do with registering for home delivery?" **Ex. 1, p. 6**.  Plaintiff informed Mr. Gonzalez that he had talked to Yvette Riddick and Karmela Galicia (employees of Defendants) who both admitted there were delays in delivering food. *Id*. Again, Plaintiff pointed out that the fact his name and address was not registered, although Plaintiff previously registered his name and address **twice**, "just proves my point… So no, please don't sign me up for a failed home delivery program." *Id*.  In this email Plaintiff goes on to inform Defendant Gonzalez that the ADA requires that he be allowed to get food without a face covering "onsite but without having to enter the building." *Id*.  Plaintiff ended with:

> "I would rather you graciously provide the reasonable accommodation of curb side pickup.  It's not a novel concept these days.  It would be quick and easy to do.  Social distancing can be maintained because it's outdoors.  That would be convenient to me and less burdensome to you, yet be compliant with the ADA. *Ultimately I want to avoid having to go into litigation to get this worked out*."

21. In an email sent on January 23, 2021, at 2:12pm, Plaintiff in "good faith" attached a link to the USDA Nondiscrimination Statement. **Ex. 1, p. 7**. Plaintiff again stated his intent "to resolve this dispute without the necessity of litigation and court intervention." Having not received a response from Defendant Gonzalez, Plaintiff wrote another email on January 29, 2021, reminding Gonzalez that Plaintiff had not had "access to food at the Doniphan location for over a month now." **Ex. 1, p. 8**.

22. In an email dated February 1, 2021, Mr. Gonzalez again rested on the accommodations outlined in prior emails: 1) wear a face shield; 2) home delivery; and, 3) drive to a different location of public accommodation to obtain food via a drive through where Defendant Gonzalez says that Plaintiff would not be required to wear a face covering while in his vehicle. In this way, Mr. Gonzalez continued ignoring the outlined reasons provided by Plaintiff explaining why those three options were not reasonable accommodations. **Ex. 1, p. 9**. One, the Plaintiff cannot wear a face shield due to his disability; two, home delivery has proven ineffective; and three, Plaintiff does not own a vehicle to drive to other sides of town.

23. Callously, Mr. Gonzalez cynically pointed out a typo in Plaintiff's proposed ADA complaint. *Id*. Plaintiff responded on February 3, 2021, telling Mr. Gonzales about the "mockery and insensitivity with which you attended to the situation demonstrates how disconnected the organization is from its initial purpose." **Ex. 1, p. 10**. The remainder email exchanges demonstrate that there was a breakdown in communications, which Plaintiff ultimately attributes to Defendant Gonzalez because he failed to properly address the issues Plaintiff was bringing before him. **Ex. 1, pp. 11-14**. For example, Mr. Gonzalez never investigated the act of his employee, Defendant John Doe, pushing Plaintiff over the mask. Mr. Gonzalez never addressed the issues Plaintiff told him about why the accommodations being offered were not reasonable:

not being able to wear the face shield due to disability, the defective home delivery program, and not having a vehicle to access the drive through locations, and why those avenues were not reasonable accommodations. Despite Plaintiffs objections, Mr. Gonzalez stated that the accommodations being offered, despite their drawbacks, were "good enough" and that they would continue to require the wearing of face masks at their food distribution centers.

24. With no genuine consideration Defendant Gonzalez actually further abused his authority when violating Plaintiff's privacy by making public searches about Plaintiff to determine whether he was the property owner of the residence where he lived at the time and any vehicle ownership, none of which is required information for food distribution. Plaintiff was never informed of such a search to take place, never gave consent for personal information to be sought out nor did Plaintiff waive any right to general disclosure. In this way, Defendant Gonzalez aggravated the discrimination against Plaintiff, by singling him out for personal questions about assets or the lack of, not asked of any other, non-disabled person trying to get food.

25. Defendant Gonzalez not only was unable to rectify the adverse consequences of Plaintiff being placed at a disadvantage because of his disability at the location subject to this suit, Defendant Gonzalez escalated the matter as if by reprisal when violating Plaintiff's privacy with unnecessary inquiries and with little to no moral compass of his unethical personal practices.

26. Defendant Gonzalez's callous indifference to an individual with less opportunity, than himself, creates an adverse effect that entails more than just a refusal to provide a reasonable accommodation. Defendant Gonzalez was made aware that Plaintiff was physically pushed over the mask, and had communicated with other staff members of the EPFH distribution

chain; Mr. Gonzalez was given multiple facts and statements via phone conversations and emails, of which he could take note to engage in a "good faith interactive process" on behalf of EPFH.  Instead Defendant Gonzalez availed himself of a public records search to scrutinize and later attempt to embarrass Plaintiff personally, inquiring into Plaintiff's home and vehicle ownership, without communicating to Plaintiff that this would be done or disclosing the need to inform himself of such information. This response from Defendant Gonzalez after he was informed of the flawed home delivery system, places Plaintiff in an unequal status by subjecting him to a deeper probe into personal information, than any other person, in order to obtain any benefits being offered.  Wherefore, it is clear now that without the timely intervention of the Court this callous indifference may escalate to simply boundless privilege that will certainly promulgate further injury to those in need of services of this organization. The discrimination passes from speculative to an actual and imminent threat of further suffering a concrete and particularized injury-in-fact through reprisal or retention from Defendants to Plaintiff because the challenged the conduct and was met with a misusage of power by Defendant Gonzalez.

**27.**   Plaintiff has suffered and will continue to suffer direct and indirect injury as a result of the Defendants' moral compasses gone awry.  Discrimination compromises the ethical capacities of any organization when the leadership positions hold a high degree of confidence in their own judgment as with Defendants mentioned herein.  Defendants should be compelled to comply with the requirements of the ADA to rectify their conduct as they are not above the long established laws.

28.   Defendants operate a place of public accommodation as defined by the ADA and the regulations implementing the ADA, 28 CFR 36.201(a) and 36.104, at the real property, that is the physical location, where Defendants operate the food bank. Defendants are responsible for

complying with the obligations of the ADA. The place of public accommodation that the Defendants operated and is the subject to this lawsuit is located at the "walk-up" food bank, at EPFH Distribution West, located at 5300 Doniphan, El Paso, TX, 79932 but is not limited to the scope of the EPFH distribution locations, it is in fact only a satellite location not owned by EPFH agency in and of itself but currently marketed for lease by the actual owner.

29. Plaintiff has a realistic, credible, existing and continuing threat of discrimination from the Defendants' non-compliance with the ADA with respect to the food pantry they operate as described but not necessarily limited to the allegations in this Complaint. Plaintiff has reasonable grounds to believe that he has suffered due to the moral blinders of this organization "gone wrong" and will continue to be subjected to discrimination in violation of the ADA by the Defendants. Defendants must operate without engaging in misleading and unlawful conduct when persons such as Plaintiff look to avail themselves of the food available at such food bank without fear of discrimination. Perceptions of unfairness and a lack of commitment to ethical standards by those operating this charitable organization is the root cause of the discrimination and ADA violations for the disabled.

30. The Defendants have discriminated, and continue to discriminate, against the Plaintiff in violation of the ADA by, *inter alia*, denying access to food to Plaintiff because he cannot wear a face covering because of a disability, and by exposing and submitting Plaintiff to discrimination, physical pushing, shaming, degradation, unnecessary probing into Plaintiff's life, and demeaning behavior by Defendants' staff and employees, because of his disability

31. The Defendants all lack accountability for collective decision making, they have discriminated, and continue to discriminate, against the Plaintiff by denying him access to full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or

accommodations of its place of public accommodation in violation of 42 U.S.C. 12181 *et seq* and 28 CFR 36.302 *et seq,* and very likely denying Plaintiff food because he reported the assault against his person, pointed out the contradictions and failed services while also questioning Defendants' policies.  Further, Defendants apportion their duties in a way that allows daily decision makers to behave irrespective of laws and federal regulations since the channels for expressing concern from the public are inadequate. Defendants continue to discriminate against the Plaintiff by making excuses for unreasonable modifications in policies, when failing to train, and in violating practices and procedures, since such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and by failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals who are not disabled.

32. Instead of providing persons that cannot wear a face covering because of disabilities with a reasonable accommodation, Defendants refuse to provide food altogether. Defendants promulgate a policy that instructs persons who cannot wear a face covering because of a disability to sign up for a failed home delivery system that deprived Plaintiff of food for months.  Plaintiff was told that he could register for home delivery as a reasonable accommodation.  Plaintiff did register for home delivery of food in November of 2020, and only received food once since that time.

33. Thus, the home delivery program does not provide persons who cannot wear face coverings because of disabilities a reasonable accommodation to get food.  Plaintiff informed Defendant Gonzalez about this fact. Mr. Gonzalez agreed that there were problems with the home delivery program and admitted that many deliveries had not been made.  Mr. Gonzalez

also informed Plaintiff that his name and address were not registered for the home delivery program although by this time, Plaintiff had registered for the home delivery program **twice**. Yet, despite the obvious ineffectiveness of the home delivery program, Defendant Gonzalez stated that the accommodations being offered, despite their drawbacks were "good enough" and that they would continue to require the wearing of face masks at their food distribution centers. Plaintiff contends he does not have to submit to an accommodation being offered that has been proven in practice to be ineffective unreasonable. Plaintiff requested a reasonable accommodation of curb side service[1], but Defendants refused to provide this accommodation.

### **Cause of Action – Violation of Title III of the ADA**

34. The ADA expressly prohibits, among other things, discrimination on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations by any person who owns, leases, (or leases to), or operates a place of public accommodation. Under the terms of the ADA, discrimination includes a failure to provide services to a disabled person to the extent that such services are provided to non-disabled persons. The ADA requires that goods, services, facilities, privileges, advantages, and accommodations be afforded to an individual with a disability in the most integrated setting appropriate to the needs of the individual.

35. Title III of the ADA, which applies to public accommodations such as the food bank open to the general public operated by Defendants, establishes the general rule that no individual shall be discriminated against on the basis of a disability in the full and equal enjoyment of the goods,

---

[1] Plaintiff does not "prefer" curb side service, but believes it is the most reasonable accommodation under the circumstances. Plaintiff would actually prefer to be able to obtain food like everyone else who is not disabled without the requirement to wear a face covering.

services, facilities, privileges, advantages, or accommodations of any public accommodation.

36. Plaintiff is an individual with a disability within the meaning of the ADA because Plaintiff has a physical and mental impairment that substantially limits one or more of Plaintiff's major life activities and systems as described herein.

37. Plaintiff requested an accommodation from the face covering policy due to his disability, to wit: providing curb side service. The request was reasonable as it was consistent and in compliance with the State of Texas, the City of El Paso's, and CDC's mask orders and guidelines.  Such accommodation would have allowed Plaintiff to enjoy full and equal enjoyment of the food as provided to people who are not disabled and are able to comply with the request to wear a covering without potentially subjecting themselves to respiratory distress and/or other physical or mental injuries or ailments.  This was not Plaintiff's preferred method, but the only reasonable accommodation Plaintiff could think of under the circumstances, considering that Defendants offered no reasonable accommodation at all.  Furthermore, the method of distribution at this site is via a shopping cart that is loaded by the volunteers and pushed to the recipients after identification is obtained. This method is mostly conducted outside of the facility, for the most part is contactless and usually within a few feet distance between the shopping cart and the individuals transacting. Plaintiff is not seeking therefore to modify goods and services but to seek a reasonable accommodation.

38. Defendants owns, leases, or operates a place of public accommodation within the meaning of the ADA because Defendants owns, leases, or operates a food bank which provides for the sale of goods to members of the public.

39. Defendants are in violation of the ADA because they discriminated against Plaintiff on the basis of Plaintiff's disability in the full and equal enjoyment of the goods, facilities, privileges, advantages, or accommodations of the food bank Defendants operates, because it denied Plaintiff the goods, services, facilities, privileges, advantages, and accommodations of the food bank in the most integrated setting appropriate to Plaintiff's needs, because it refused him access to food, based on his disability.

40. Defendants' policies and practices have, are, and will cause irreparable harm to the Plaintiff.

41. Plaintiff intends to continue to try to get food at the food pantry operated by Defendants, and made the subject of this lawsuit, however, after being assaulted and mistreated Plaintiff will need the Court's intervention to ensure the Defendants' compliance with the ADA.

42. Plaintiff did not pose a direct threat to the health or safety of others. There was no significant risk to the health or safety of others that could not be eliminated by a modification of Defendants' policies, practices and procedures. Social distancing and other safety precautions were in place at the "walk-up" food bank in question, Plaintiff did not have Covid 19, and had no signs or symptoms of Covid 19, and the state of Texas and City of El Paso's order, guidelines, and CDC guidelines recognized the need for a medical exception to the mask requirement. Defendants simply chose to disregard the exception, despite the fact that they had no basis to conclude that Plaintiff was a direct threat to the health or safety of others. Defendants made no individual assessment that considered Plaintiff's actual abilities or disabilities; instead, Defendants promulgated and adopted a broad discriminatory policy based on generalizations and stereotypes.

**Cause of Action – Assault**

43.     Plaintiff incorporates by reference the averments of Paragraphs 1- 42 of the Complaint as if the same were set forth in full.

44.     Defendant John Doe intentionally or knowingly subjected Plaintiff to harmful and offensive physical contact and apprehension of imminent bodily harm without Plaintiff's consent and without justification, in furtherance of Defendants' illegal policies procedures.

45.     As a direct and proximate result of the aforementioned incident, Plaintiff suffered the following damages:

(a)     Mental anguish and emotional distress;

(b)     Anxiety, embarrassment and humiliation;

(c)     Loss of the ordinary pleasures of life; and

(d)     Suffering and inconvenience.

46.     **RESPONDEAT SUPERIOR:**     The Plaintiff was injured as the result of a tort of assault.  The tortfeasor, Defendant John Doe, was an employee of the Defendants.  The tort was committed while the employee was acting within the scope of employment – that is, the act was (1) within the employee's general authority, (2) in furtherance of the Defendant's business, and (3) for the accomplishment of the object for which the employee was hired.

**Prayer**

47.     For these reasons, Plaintiff requests that the court award him injunctive relief requiring Defendants to accommodate Plaintiff by allowing him to obtain food without wearing a face covering so that he may enjoy the benefits, privileges, goods, services facilities, advantages, and accommodations including equal access to and enjoyment of the food bank operated by Defendants in the future. To affect such relief to Plaintiff, it may be appropriate for the court to

provide clear protocols to Defendants and their staff advising that persons who cannot wear a face covering due to a disability must be accommodated. Defendants should be required to train their staff about its legal obligations and to post and disseminate notice to all pertinent staff regarding their legal obligations under the ADA. Finally, Plaintiff will through discovery attempt to obtain the identity of John Doe, but Plaintiff now requests that Defendant John Doe be found liable to Plaintiff for assault and that appropriate Judgment be taken against Defendant John Doe.

   WHEREFORE, Plaintiff seeks injunctive relief, actual damages, and reasonable attorney fees, if any, including litigation expenses and the costs in this action.

                              Respectfully submitted,

                              *Alejandro Hernandez*

                              Alejandro Hernandez
                              P.O. Box 13734
                              El Paso, TX 79913
                              (915) 258-1666
                       Email: flexyourrights@outlook.com